Electronically Filed
5/2/2018 12:26 PM
Lois Rogers, Smith County District Clerk
Reviewed By: Gina McClung

18-1007-A

CAUSE NO. _____

| | | |
|---|---|---|
| **CLINTON R. NORMAN,** § | | **IN THE DISTRICT COURT** |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | | **SMITH COUNTY, TEXAS** |
| § | | |
| **CITY OF BIG SANDY AND CHIEF** § | | |
| **TIM SCOTT, (IN HIS OFFICIAL** § | | |
| **CAPACITY),** § | | _____ **JUDICIAL DISTRICT** |

**Defendants.**

### PLAINTIFF'S ORIGINAL PETITION

Plaintiff Clinton R. Norman files this Original Petition against Defendants City of Big Sandy and Chief Tim Scott, (in his official capacity), for violating state and federal law. The causes of action and summary of claims relating thereto are addressed below:

### I. DISCOVERY CONTROL PLAN

1. At this time, Plaintiff requests that discovery be conducted under Level III, and that this matter be placed on the non-expedited docket as it involves damages exceeding $100,000, (but less than $2,000,000), and other non-wage damages such as equitable/injunctive relief.

### II. PARTIES, JURISDICTION AND VENUE

2. Plaintiff Clinton R. Norman, ("Plaintiff" or "Norman") is currently a citizen and resident of the State of Texas.

3. Defendants City of Big Sandy, and Chief Tim Scott, (in his official capacity), (hereinafter collectively referred to as "Defendant" or "Big Sandy"), is a municipal entity that provides service to the citizens of Big Sandy, Texas. It is considered to be a "General Law Type A" city, with Big Sandy's main offices being located at 100 N. Tyler St, Big Sandy, Texas 75755.

4.     Both the City of Big Sandy, and Chief Tim Scott, (in his official capacity), can be served at 100 N. Tyler St, Big Sandy, Texas 75755, by serving either Big Sandy's Mayor, Sonny Parson, or Big Sandy's City Secretary, Laura Rex.

5.     The court has jurisdiction to hear the merits of Plaintiff's claims under Section 554 of the Texas Government Code. Venue exists in this County and District Court as detailed in TEX. GOV'T. CODE § 554.007(b).

6.     This matter is timely as it is being filed within the time requirements of TEX. GOV'T. CODE § 554.005 & 554.006.

7.     All conditions precedent have been performed, or have occurred, to allow this suit to go forward, and this matter is being filed within the applicable statute of limitations.

8.     In order to avoid duplication of cases, Plaintiff also brings a claim under the protections of the First Amendment of The Constitution of the United States in this Court, pursuant 42 U.S.C. § 1983.

### III.     FACTUAL ALLEGATIONS

9.     Norman was employed by Defendant as a Police Officer from approximately November of 2013, until February 15, 2018. During that time he was employed by the Big Sandy Police Department, Norman received significant praise and top performance evaluations from his superiors.

10.     One of Norman's job duties with the Big Sandy Police Department was to gather information/documentation on various crimes, and submit that information/documentation for consideration to the Upshur County District Attorney's Office.

11. On or about December 9, 2017, Norman reported for duty to begin his shift. Norman was approached by his supervisor who was putting together the information/documentation for the District Attorney on an arrest made during a traffic stop performed by a fellow officer. This arrest occurred after the officer searched the driver's vehicle and found an illegal substance.

12. The affidavit prepared by the officer – to justify the search – stated that the driver gave permission for the officer to search the vehicle. As a result, Norman's supervisor obtained and reviewed the audiotape and videotape of the stop to confirm that permission was given by the driver to search the vehicle as stated in the officer's affidavit. However, during a review of the audiotape and videotape, Norman's supervisor discovered that this officer had not been given permission to search the vehicle by the driver. He then asked Norman, (and eventually another fellow officer), to independently review the same audio and video. Both other officers independently determined that the driver did not give permission to search the vehicle. All three officers were in agreement that the information in the affidavit about the driver giving permission for the search was false.

13. Norman's supervisor believed that policy required a separate investigator to move forward with matter, so he requested that Norman continue the investigation against his fellow officer for submitting the false affidavit. All three officers provided statements stating they believed the fellow officer had submitted a false affidavit regarding the traffic-stop search.

14. On or about December 14, 2017, Norman reported to Big Sandy Police Chief Scott ("Chief Scott"), about the false information provided in the affidavit. Chief Scott said he would look into the matter; however, it is believed virtually nothing was done to address the issue, nor was any internal affairs investigation started on the matter.

15. Norman obtained advice from the Big Sandy Councilman who is the liaison to the police department for Big Sandy. (Note: this person was also a former Big Sandy Police Chief and is Norman's father). The Councilman told Norman to put a criminal investigation packet together and submit it to Chief Scott. As advised, Norman put together the information on the false statement in the affidavit, along with other supporting information, (including affidavits from his supervisor and a fellow officer), and submitted it to Chief Scott. Rather than take the matter seriously, Chief Scott got angry and said he was not going to do anything to address it as it was "a trumped up charge."

16. Norman, Norman's supervisor, (and the other officer that reviewed the audio/video), strongly believed that the fellow officer had intentionally falsified an affidavit to justify a search of a vehicle, and was upset that Chief Scott seemed to not want to do anything about it. Norman was further concerned that something needed to be done to prevent this officer from doing this again in the future. Thus, Norman provided information on the illegal activities of the fellow officer to the Big Sandy City Attorney – thru the Big Sandy City Council police liaison – to (a) allow the City of Big Sandy to determine if they believed any violations occurred, and (b) have this City Attorney forward the information/documentation to the Upshur County District Attorney's Office for consideration. Thereafter, the issue was then sent to Grand Jury for consideration on criminal charges. Although a criminal indictment did not come out of the Grand Jury, one may be obtained in the future.

17. After finding out that Norman had reported/provided information to Big Sandy's City Attorney and the Upshur County District Attorney's Office confirming the fellow officer submitted a false affidavit, Chief Scott become extremely upset. As a result, Chief Scott began procedures to terminate Norman, Norman's supervisor, and the other officer that provided a statement confirming the illegal activity of their fellow officer.

18. On or about January 26, 2018, Chief Scott provided Norman with a document entitled "Big Sandy Police Department INTERNAL COMPLAINT," wherein it was alleged that by submitting the information outside the department Norman had violated the "values" and "policies" of Big Sandy, including "[i]mmoral, unlawful, or improper conduct which would tend to affect the employees relationship to his job, his fellow workers, his reputation, or good-will in the community." Chief Scott provided similar documents to Norman's supervisor and the other officer.

19. Thereafter, on or about February 8, 2018, an "AMENDED INTERNAL COMPLAINT" was provided to Norman that had more details as the basis for investigations, which included false allegations and claims about violations of certain laws and policies/procedures.

20. On February 15, 2018, Chief Scott provided Norman with a "MEMORANDUM OF SEPARATION," which ended Norman's employment with Big Sandy. Similar false allegations and claims were contained in this document as in the previously provided "Complaints."

21. On or about February 16, 2018, Plaintiff appealed the termination decision by Defendant made on February 15, 2018. Thereafter the matter went through the administrative grievance process of Big Sandy, which ended on April 17, 2018, with a meeting of the Big Sandy City Council. During this meeting, Big Sandy adopted new rules for these termination grievances which restricted the presentation to 15 minutes, and prevented Plaintiff from allowing witnesses to provide testimony on his behalf. During the hearing in front of Big Sandy's Council one of the council members made it clear he was more concerned with Norman's complaints causing a disruption, rather than one of Big Sandy's police officers committing perjury to justify a search.

22. The attorney who represented the Big Sandy Police Department during the grievance hearing was allowed to meet with Big Sandy's City council *ex parte* to discuss the matter outside the presence of the public, (which they called an "executive session"). Neither Norman nor Norman's attorney were allowed to attend the executive session. Although Big Sandy's attorney

was allowed to act as both advocate and counselor in this matter, one of the council members was excluded from participation in the "executive session" because of a claimed conflict of interest. After the secret meeting between the police department's lawyer and Big Sandy's City Council, they all came back into open session and voted to uphold the termination decision in a majority vote.

23. Norman, Norman's supervisor, and the other officer that reported the illegal activity of their fellow officer, were either terminated or forced to resign. But for Norman reporting in good faith the potential illegal actions of his fellow officer to Chief Scott, the Big Sandy City Attorney, and/or the Upshur County District Attorney's Office, Norman would not have been terminated.

## IV. CAUSES OF ACTION

### A. Violation of Texas Whistleblower Act

24. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 23 as if fully stated herein.

25. Plaintiff was a public employee who was formerly employed by Defendant.

26. Plaintiff in good faith reported a violation of law by another public employee to an appropriate law enforcement authority.

27. Because Plaintiff reported the violation of the law by his fellow officer, Plaintiff was subject to hostility, suspension, and ultimately termination. These actions violate the protections of the Texas Whistleblower Act, TEX. GOV'T. CODE § 554.001 *et seq.*, ("TWA").

28. The TWA is remedial in nature and must be liberally construed. Its purposes are (1) to enhance openness in government by protecting public employees who inform proper authorities of legal violations and (2) to secure governmental compliance with the law on the part of those who direct and conduct governmental affairs.

29. Plaintiff's good faith reports and complaints of illegal activity of his fellow officer to the Defendant's Chief of Police, Defendant's City Attorney, and the District Attorney for the County, fall within the protections of the TWA. But for Plaintiff making these complaints/reports, Plaintiff would not have been suspended or terminated by Defendant. In addition, Defendant knowingly, willfully, and with reckless disregard, carried out its illegal termination of Norman.

30. Within ninety (90) days of Plaintiff making his protected complaint under the TWA, Plaintiff was suspended and terminated. Thus, the burden of proof shifts to Defendant to prove that he was not suspended or terminated because of his protected complaint/report. TEX. GOV'T. CODE § 554.004.

31. As a result of Defendant's actions as described above, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), mental anguish, (including loss of enjoyment of life), and other losses. Plaintiff requests that he be awarded all relief – to which he is entitled – as outlined in TEX. GOV'T. CODE § 554.003, including actual damages, lost wages during the period of suspension/termination, compensation for lost fringe benefits compensatory damages, (including past pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other future nonpecuniary losses), reinstatement, injunctive relief to prevent further retaliation, court costs, and attorney fees.

**B.** **Violation of The First Amendment to The United States Constitution/42 USC §1983**

32. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 31 as if fully stated herein.

33. Plaintiff was formerly employed by Defendant.

34. As an employee of Defendant, and during his employment, Plaintiff enjoyed the protections from being terminated in violation of The Constitution of the United States.

35. The First Amendment to The Constitution of the United States, ("First Amendment"), prevents Defendant from "abridging the freedom of speech . . . or the right . . . to petition the government for a redress of grievances. In the context of Plaintiff's employment rights, Plaintiff cannot be terminated for taking advantage of these free speech rights.

36. Plaintiff's First Amendment rights were violated by Defendant, as (a) Plaintiff was subjected to suspension and termination by Defendant – a clear adverse employment action; (2) Plaintiff's speech/complaints are a matter of public concern; (3) Plaintiff's interest in making the complaints/statements outweigh the Defendant's interest; and (4) the exercised complaint/speech motivated Defendant's decision to suspend and terminate Plaintiff.

37. Plaintiff's claims involving the violation of his First Amendment Rights are brought pursuant to the requirements and obligations of 42 U.S.C. §1983.

38. By retaliating against Plaintiff, Defendant violated Plaintiff's well-established rights secured to him by the First Amendment to The Constitution of the United States, which violation is actionable under 42 U.S.C. § 1983.

39. The deprivation of Plaintiff's rights under the First Amendment was done under color of state law, and Defendant knew or should have known that this was a First Amendment violation as this is a clearly established constitutional right; however, Defendant was indifferent to Plaintiff's rights.

40. As a result of Defendant's actions as described above, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), mental anguish, (including loss of enjoyment of life), and other losses. Plaintiff requests that he be awarded all relief – to which he is entitled – as outlined in 42 U.S.C. § 1983.

## V. JURY DEMAND

Plaintiff requests trial by jury on all claims.

## VI. PRAYER

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff requests judgment against Defendant as follows:

a. Judgment against Defendant for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial;

b. Judgment against Defendant for all compensatory damages for the maximum amount allowed by law, including past and future mental anguish and loss of enjoyment of life;

c. An order that Defendant take such other and further actions as may be necessary to redress Defendants' violation, including injunctive relief to prevent further retaliation by Defendants;

d. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

e. Costs of suit, including attorney's fees; and

f. The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement (or front pay), to which Plaintiff may be justly entitled.

Respectfully submitted,

**/s/ Robert (Bobby) Lee**
Robert (Bobby) Lee
*Attorney in Charge*
Texas Bar No. 00787888
Megan Dixon
State Bar No. 24079901
Meagan Whitley
Texas Bar No. 24088629

**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400 phone
(214) 749-1010 fax
**ATTORNEYS FOR PLAINTIFF**